**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **RITO PROSPERO**, | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-25-CV-00001-KC** |
| | § | |
| **WALMART ASSOCIATES, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Presently before the Court is Defendant Walmart Associates, Inc.'s "Brief in Support of Demand for Arbitration" (ECF No. 10), which the Court construes as a motion to compel arbitration. Therein, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, Walmart moves the Court to compel Plaintiff Rito Prospero to submit his claims to arbitration and stay the case pending arbitration. The Honorable District Judge Kathleen Cardone referred the motion to the undersigned Magistrate Judge. For the reasons that follow, the motion is GRANTED.

## I.   BACKGROUND

Prospero was employed by Walmart at a Sam's Club store located in El Paso, Texas, from June 14, 2023, to November 21, 2024.[1] On November 14, 2024, Prospero initiated this lawsuit in state court, asserting claims for negligence and non-subscriber negligence based on an on-the-job injury that he sustained at the store on March 25, 2024.[2]

---

[1] Wright Aff. at ¶ 18, ECF No. 10; Stewart Aff. at ¶¶ 4, 10, ECF No. 21-1; Pl.'s Original Pet. at 1, ECF No. 1.

[2] Pl.'s Original Pet. at 1; Joint Rule 26(f) Conf. Report at 3, ECF No. 7. Defendants removed the case to federal court in January 2025.

Headquartered in Bentonville, Arkansas, Walmart operates stores across the United States, serving people from inside and outside of Texas and using interstate mail and travel systems.[3]  In Texas, Walmart is a non-subscriber to workers' compensation insurance; instead, its Texas Injury Care Benefit Plan provides coverage for, *inter alia*, payments for medical care of Walmart's Texas associates who sustain injuries in the course and scope of their employment.[4]

All Walmart associates working in Texas are required to complete certain computer-based learning (CBL) modules.[5]  The CBL modules are paperless and are accessed through computers at a Walmart location, such as the Sam's Club store where Prospero worked, by the associate entering his or her confidential associate identification number and password.[6] Whereas Walmart's Learning Management System, a computerized system, assigns the identification number to the associate when he or she is first employed, the associate creates the password.[7]  Associates are directed not to share their password information.[8]  The CBL modules operate on the Learning Management System, and all completed modules are stored and recorded: Once a module is completed by an associate, an electronic record is retained which identifies the date the module was completed, the completion status, and the score, if the module requires a test.[9]

---

[3] Wright Aff. at ¶ 4.

[4] *Id.* at ¶ 5; Def.'s Mot. Ex. B, at 41, ECF No. 10.  Citations to Walmart's Exhibits A, B, and C that Walmart submitted with its motion refer to the page numbers imprinted on the exhibits by the Court's Case Management and Electronic Case Filing system.

[5] Wright Aff. at ¶ 7.

[6] *Id.*; Stewart Aff. at ¶ 4,

[7] Wright Aff. at ¶¶ 7–9; Stewart Aff. at ¶¶ 5, 9.

[8] Wright Aff. at ¶ 8.

[9] *Id.* at ¶ 10; Stweart Aff. at ¶¶ 5–6.

One of the CBL modules is entitled "Texas Injury Care Benefit Plan."[10]  This module trains associates on the benefits under the Texas Injury Care Benefit Plan, the associates' responsibilities for reporting an injury, the process to receive benefits, the process for appeal if benefits are denied—and mandatory arbitration for work-related injuries.[11]  The Texas Injury Care Benefit Plan module consists of 22 screens divided into multiple sections and includes quizzes.[12]  One of the sections is entitled "Summary Plan Description": a screen in this section states, "[y]ou can access the Summary Plan Description by selecting this button" and instructs the associate to "[s]elect the link to the plan and review it before continuing to the next page"; the selection button is labeled "Summary Plan Description."[13]  The last screen of the module is entitled "Completing the Course": on this screen, the associate is asked to click an "I understand" button located below a list of acknowledgements, including that "You have read and understand the Arbitration Acknowledgment and Policy."[14]  The Texas Injury Care Benefit Plan CBL module is not recorded as "completed" unless the associate clicks the "I understand" button.[15]

Walmart submitted a copy of the Summary Plan Description (SPD).  The SPD's cover page states "Walmart Inc. Texas Injury Care Benefit Plan" and "Summary Plan Description."[16]  Appendix A of the SPD, which is entitled, "Arbitration of Certain Injury-Related Disputes,"

---

[10] Wright Aff. at ¶ 12.

[11] *Id.*

[12] *Id.*

[13] Def.'s Mot. Ex. A, at 34, ECF No. 10.

[14] *Id.* at 35.

[15] Wright Aff. at ¶ 17.

[16] Def.'s Mot. Ex. B, at 37; *see also* Wright Aff. at ¶ 15.

contains Walmart's arbitration policy.[17]  The policy states that "[t]he Employer hereby adopts a mandatory company policy requiring that certain claims or disputes must be submitted to final and binding arbitration under this arbitration requirement ('Policy')" and that "[n]either an Associate nor an Employer shall be entitled to a bench or jury trial on any claim covered by this Policy."[18]  The policy defines "Covered Claims" as "any legal or equitable claim by or with respect to an Associate for any form of physical or psychological damage, harm or death which relates to an accident, . . .  []including . . . claims of negligence or gross negligence."[19]  The policy further states that "[t]his binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute" and that it "is equally binding upon, and applies to any such claims that may be brought by[] an Employer and each Associate."[20]

According to Walmart, Prospero completed the Texas Injury Care Benefit Plan CBL module on June 15, 2023, and he completed a refresher course on June 14, 2024.[21]

Walmart filed the instant motion on April 29, 2025.[22]  Prospero filed a response to the motion on May 21, 2025,[23] and Walmart followed by filing a reply on May 30, 2025.[24]  After the motion was referred to this Court in December 2025, the Court issued an interim order seeking

---

[17] Def.'s Mot. Ex. B, at 91.

[18] *Id*. at 91–92.

[19] *Id.* at 91.

[20] *Id.* at 96.

[21] Wright Aff. at ¶ 19.

[22] Def.'s Br. in Supp. of Demand for Arb. [hereinafter Def.'s Mot.], ECF No. 10.

[23] Pl.'s Resp. in Opp'n to Def.'s Mot. [hereinafter Pl.'s Resp.], ECF No. 12-1.

[24] Def.'s Reply in Supp. of Demand for Arb. [hereinafter Def.'s Reply], ECF No. 15.

further briefs and affidavits from the parties.[25]  In response to that order, Walmart and Prospero

each filed a supplemental brief, respectively, on January 28, 2026, and February 5, 2026.[26]

## II.   DISCUSSION

Relying on the arbitration policy, Walmart argues that Prospero and Walmart are parties

to an arbitration agreement and moves the Court to compel Prospero to submit his negligence

claims to arbitration.  Def.'s Mot. at 1, 8–9.  Prospero opposes the motion; he argues that there is

no evidence that he agreed to arbitrate his claims, and in any event, any arbitration agreement is

procedurally unconscionable and therefore invalid and unenforceable.  Pl.'s Resp. at 2, 4, 6, 9;

Pl.'s Suppl. Br. at 2.

The FAA[27] provides:

> A written provision in . . .  a contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such contract . . . shall
> be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in
> equity for the revocation of any contract.

9 U.S.C. § 2.  Under § 2's saving clause ("save upon such grounds as exist at law or in equity for

the revocation of any contract"), arbitration agreements may be invalidated or declared

unenforceable by generally applicable contract defenses, such as fraud, duress, or

unconscionability.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010); *AT&T Mobility LLC

v. Concepcion*, 563 U.S. 333, 339 (2011).

---

[25] Interim Order, ECF No. 20.

[26] Def.'s Suppl. Br. in Supp. of Demand for Arb. [hereinafter Def.'s Suppl. Br.], ECF No. 21; Pl.'s Suppl. Br. in Resp. to Def.'s Suppl. Br. [hereinafter Pl.'s Suppl. Br.], ECF No. 22.

[27] The parties do not dispute that the FAA applies here.  *See* Def.'s Mot. at 9 (concluding that the FAA requires the Court to compel arbitration); Pl.'s Resp. at 3 (citing 9 U.S.C. § 1 *et seq.*); *see also Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022) (The FAA applies to contracts "evidencing a transaction involving commerce," and employment contracts—except those of seamen, railroad employees, and transportation workers—fall within that category.).

A party to an arbitration agreement can seek an order from a federal district court compelling arbitration.  9 U.S.C. § 4.  In ruling on a motion to compel arbitration, the court "must determine whether the parties agreed to arbitrate the dispute in question."  *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016) (internal quotes omitted).  "That determination involves two questions: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id.* (same).  The parties here dispute only the first question: whether a valid agreement to arbitrate exists.

A party seeking to compel arbitration, Walmart here, bears the initial burden to "show that a valid arbitration agreement exists between the parties."  *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 530 (5th Cir. 2019); *see also Yanez v. Dish Network, L.L.C.*, 140 F.4th 626, 630 (5th Cir. 2025) (Where the parties dispute the first question—the validity of the agreement—"the party moving to compel arbitration must show that the agreement meets all of the requisite contract elements.").  On the other hand, a party seeking to invalidate an arbitration agreement, Prospero here, "bears the burden of establishing its invalidity."  *Parrott v. Int'l Bancshares Corp.*, -- F.4th ----, No. 25-50367, 2026 WL 364324, at *2 (5th Cir. Feb. 10, 2026); *see also In re Poly-America*, 262 S.W.3d 337, 348 (Tex. 2008) (Under Texas law, the burden of proving that a contract, such as an agreement to arbitrate, is unconscionable falls on the party opposing the contract.).

## A.  Existence of Valid Agreement to Arbitrate

In answering the question whether a valid arbitration agreement exists, courts generally apply "ordinary state-law principles that govern the formation of contracts," *Morrison v. Amway*

*Corp.*, 517 F.3d 248, 254 (5th Cir. 2008), and the parties here agree that Texas law applies.[28]  As relevant here, under Texas law, a valid arbitration agreement exists between an employee and his employer if the employee (1) receives notice of the employer's arbitration policy and (2) accepts it.  *Albertson's Holdings, LLC v. Kay*, 514 S.W.3d 878, 883 (Tex. App.—Tyler 2017, no pet.) (citing *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006)); *accord Doe v. Columbia N. Hills Hosp. Subsidiary, L.P.*, 521 S.W.3d 76, 81 (Tex. App.—Fort Worth 2017, pet. denied) (same).  "An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms" of the policy.[29]  *In re Dallas Peterbilt*, 196 S.W.3d at 163; *see also Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 203 (5th Cir. 2016) ("[A]cceptance need not be anything more complicated than continuing to show up for the job and accept wages in return for work.").

Walmart argues that Prospero received notice of its arbitration policy when he completed the CBL training modules, and Prospero accepted the terms of the policy by accepting and continuing his employment with Walmart; so, Walmart contends, Prospero is bound by the policy.  Def.'s Mot. at 7.  Consequently, Walmart continues, a valid agreement to arbitrate exists between Prospero and Walmart.  *Id.* at 1, 8.

Prospero concedes that he completed Walmart's CBL modules when he was hired.  Prospero Aff. at 1–2, ECF No. 12-2.  But he argues that there is no evidence that he agreed or consented to arbitrate his claims.  Pl.'s Resp. at 2.  His argument rests on Appendix D of the

---

[28] *See* Def.'s Mot. at 6–7; Pl.'s Resp. at 1–2.

[29] "Employment in Texas is presumed to be at-will."  *Sawyer v. E I DuPont De Nemours & Co.*, 689 F.3d 463, 467 (5th Cir. 2012) (citing *Midland Jud. Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002)).  Nothing in the record overcomes the presumption that Prospero's employment with Walmart was at-will.

SPD.  The appendix contains a one-page form, entitled "Receipt, Safety Pledge and Arbitration Acknowledgement."  The form states, *inter alia*, that "I . . . acknowledge that a mandatory employment policy is attached as an Appendix to the SPD" and that "I am accepting and agreeing to comply with these arbitration requirements"; below those statements, the form includes a signature block.  Def.'s Mot. Ex. B, at 103.  Prospero argues that the acknowledgment form was supposed to be printed and signed, but it never was.  Pl.'s Resp. at 7–8.  And since he did not sign the form, Prospero adds, there is no evidence that he entered into an agreement or consented to arbitration.  *Id.* at 2, 8; Pl.'s Suppl. Br. at 3; *cf. Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) ("Typically, a party manifests its assent by signing an agreement."); *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 210 (Tex. 2021) (concluding that the employer "established that the [e]mployees signed, and therefore consented to, the [arbitration agreements]").

Walmart points out that a header in Appendix D states that "[t]he following is to be used by guardians of minor associates and associates unable to complete and acknowledge this program through the [CBL] module."  Def.'s Mot. Ex. B, at 103.  Walmart clarifies that, for purposes of this motion, it does not rely on Appendix D's acknowledgment form and that the appendix is not applicable to its request that the claims in this case must be resolved through arbitration.  Def.'s Suppl. Br. at 2.  Walmart explains that it submitted Appendix D only because it is part of the SPD.[30]  *Id*. at 2.

Instead, Walmart relies on Prospero's electronic acknowledgment of the arbitration policy in Appendix A of the SPD.  Specifically, the last screen (entitled, "Completing the Course") of the Texas Injury Care Benefit Plan CBL module asks an associate to acknowledge—by clicking an "I understand" button—that he "read and underst[oo]d the Arbitration

---

[30] The SPD's table of contents lists four appendices, labeled A through D, and Walmart submitted all of them together with the SPD.

Acknowledgment and Policy." Def.'s Mot. Ex. A, at 35. This click-acknowledgement has two parts: the Arbitration Acknowledgment and the Arbitration Policy (or simply, the Policy). As Prospero sees it, "Arbitration Acknowledgment," as that term appears on the screen, refers to Appendix D's acknowledgment form,[31] but because Walmart does not rely on Appendix D, it also does not rely on Prospero's click-acknowledgement that he read and understood the arbitration acknowledgment.[32] On the other hand, "Policy," as that term appears on the screen, refers to Appendix A which contains Walmart's arbitration policy and is entitled, "Arbitration of Certain Injury-Related Disputes." Def.'s Mot. Ex. B, at 91 (describing "this arbitration requirement" as "Policy"). Walmart relies on Prospero's click-acknowledgement that he read and understood the arbitration *policy*. *See* Wright Aff. at ¶ 21 ("Mr. Prospero followed the process described herein to complete the Texas Injury Benefit Plan CBL[] and acknowledged that he read and understood Appendix A, Arbitration of Certain Injury Related Disputes.").

Importantly, the arbitration policy itself states that "[t]his Policy applies to all Associates without regard to whether they have completed and signed a Receipt, Safety Pledge and Arbitration Acknowledgement form or similar written receipt." Def.'s Mot. Ex. B, at 92. Therefore, Appendix D and the issue of whether or not Prospero signed (electronically or physically) the acknowledgment form in the appendix are of no moment for purposes of this motion. After all, Walmart does not argue that Prospero signed any arbitration agreement but argues "only that electronic evidence suggests []he viewed the [the arbitration policy] and thus

---

[31] *See* Pl.'s Suppl. Br. at 2 ("By disclaiming reliance on Appendix D, Defendant necessarily removes from consideration the only document in the record that expressly describes an "Arbitration Acknowledgment" and contemplates an affirmative act demonstrating acknowledgment of arbitration terms.").

[32] The Court expresses no opinion as to whether clicking the "I understand" button on the last screen of the CBL module is equivalent to electronically signing the acknowledgment form in Appendix D. *Cf.* Def.'s Suppl. Br. at 2.

had notice of its contents." *Cf. Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 n.3 (Tex. App.—El Paso 2016, pet. denied). Walmart's contract formation theory sounds in an "employee['s] acceptance-by-conduct of an arbitration agreement." *Id.* at 565 (citing *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 167–70 (Tex. App.—El Paso 2015, no pet.)).

The Court turns to whether Walmart has established that Prospero had (1) notice of Walmart's arbitration policy and (2) accepted the policy. *Albertson's Holdings*, 514 S.W.3d at 883, *supra*; *Columbia N. Hills Hosp.*, 521 S.W.3d at 81, *supra*. Walmart submitted, via the affidavit of Kontessa Wright, a senior manager of Walmart's workers compensation department, Prospero's historical associate training record,[33] which shows that Prospero completed the Texas Injury Care Benefit Plan CBL module on June 15, 2023. Def.'s Mot. Ex. C, at 105, ECF No. 10. Wright testifies that the CBL module is not recorded as "completed" unless, among other things, the associate (i) clicks the module's "**Summary Plan Description**" button that takes him to the SPD and (ii) clicks the "I understand" button on the last screen of the module, acknowledging that he read and understood the arbitration policy. Wright Aff. at ¶ 17; *see also* Def.'s Mot. Ex. B, at 34–35. Wright adds that when Prospero completed the Texas Injury Care Benefit Plan CBL module, Prospero would have accessed the SPD, including Appendix A of the SPD. Wright Aff. at ¶ 19.

---

[33] The Texas Uniform Electronic Transactions Act defines an "electronic record" as any "record created, generated, sent, communicated, received, or stored by electronic means." Tex. Bus. & Com. Code Ann. § 322.002(13). An electronic record "is attributable to a person if it was the act of the person," and "[t]he act of the person may be shown in any manner, including a showing of the *efficacy* of any *security procedure* applied to determine the person" during the electronic transaction. *Id*. § 322.009(a) (emphasis added); *see also Aerotek*, 624 S.W.3d at 205–06 (providing examples of "security procedures," including "assigning a unique identifier to a user and then tying that identifier to the user's actions"). Here, Prospero does not challenge the efficacy of the security procedures utilized by Walmart's CBL modules when Prospero completed them.

The Texas Injury Care Benefit Plan CBL module includes a section entitled, "Mandatory Arbitration Process," which explains the arbitration process generally and states that "[i]n addition to the basic coverage provided by the Texas Injury Care Benefit Plan, an associate may also . . . engage a formal arbitration process to resolve any other disputes." Def.'s Mot. Ex. B at 33–34. The SPD, in turn, states that "[t]his program includes arbitration procedures to resolve . . . . injury-related disputes between you and the Employer" and explains that "[a]rbitration is a process in which a skilled, independent arbitrator (similar to a judge) hears both sides of the situation and then makes a final and binding decision." Def.'s Mot. Ex. A, at 42. Walmart's arbitration policy, contained in Appendix A of the SPD, "require[es] that certain claims or disputes must be submitted to final and binding arbitration" and provides that neither an associate nor Walmart "shall be entitled to a bench or jury trial on any claim covered by this Policy." *Id.* at 91–97. Consequently, the notice element is adequately established.

So too is the acceptance element. Prospero concedes that Walmart required him to complete the CBL modules as a condition of his employment. Prospero Aff. at 2 ("I was told I needed to complete the computer documents as part of my job and that the documents were needed for me to work."). After completing the modules, he began and continued working at Walmart. *Id.* (testifying that on the day of his initial interview with Walmart, he completed the modules and that he returned to work the next day as instructed); Wright Aff. at ¶ 18 (testifying that Prospero was hired by Walmart on June 14, 2023); Stewart Aff. at ¶ 10 (testifying that Prospero's employment with Walmart ended on November 21, 2024).

Therefore, the Court concludes that by completing the Texas Injury Care Benefit Plan CBL module and continuing his employment with Walmart, Prospero agreed to resolve his disputes with Walmart through arbitration pursuant to Walmart's arbitration policy. *See Wal-*

*Mart Stores Tex., LLC v. Peavley*, No. 09-21-00403-CV, 2023 WL 1831122, at \*4–\*5 (Tex. App.—Beaumont Feb. 9, 2023, no pet.) (concluding that employee, who completed the same Texas Injury Care Benefit Plan CBL module, agreed to arbitrate his on-the-job injury claim against employer, a company related to Walmart here, because he received notice of the employer's arbitration policy when he completed the module and accepted the terms of the policy by continuing to work for the employer (citing *In re Dallas Peterbilt*, 196 S.W.3d at 162–63, and *In re Halliburton Co.*, 80 S.W.3d 566, 568–69 (Tex. 2002))).

The Court concludes that Walmart has met its burden of showing that a valid agreement to arbitrate between Walmart and Prospero exists.

## B. Procedural Unconscionability

Prospero argues that the arbitration agreement is unenforceable due to procedural unconscionability because he is unable to read or speak English, but when he completed the training modules, all information and documents were presented to him in English. Pl.'s Resp. at 1, 6, 8–9.

In determining whether an arbitration agreement is enforceable, courts apply state law governing enforceability of contracts generally, *Halliburton Energy Servs.*, 921 F.3d at 530; *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 406 (5th Cir. 2022), and the parties here agree that Texas law applies.[34]  Under Texas law, unconscionable contracts—whether relating to arbitration or not—are unenforceable. *In re Poly-America, L.P.*, 262 S.W.3d at 348.  Procedural unconscionability "refers to the circumstances surrounding the adoption of the arbitration provision." *In re Halliburton*, 80 S.W.3d at 571.  Procedural unconscionability may result from situations "in which one of the parties was incapable of understanding the agreement without

---

[34] Pl.'s Resp. at 4; Def.'s Reply at 7.

assistance, and the other party did not provide that assistance, such as where one of the parties was functionally illiterate or where one of the parties did not speak English." *BBVA Compass Inv. Sols., Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App.—Fort Worth 2015, no pet.) (collecting cases).

However, absent affirmative misrepresentation, trickery, or artifice, illiteracy in English alone is insufficient to establish that an agreement is procedurally unconscionable. *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 801 (Tex. App.—El Paso 2013, no pet.); *Micocina, Ltd. v. Balderas-Villanueva*, No. 05-16-01507-CV, 2017 WL 4857017, at *5–*6 (Tex. App.—Dallas Oct. 27, 2017, no pet.).[35]  Where an employee is illiterate in English, but is literate in Spanish, courts consider whether "the employee lacked the means to understand the terms of the agreement," for example, whether a Spanish language version of the agreement was made available, and whether the employer made "misrepresentations . . . about the nature of what [the employee] w[as] signing." *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 395 (Tex. App.—El Paso 2019, no pet.).[36]

---

[35] *See also In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms."); *Brackenridge Healthcare, Inc. v. Camero*, No. 04-22-00271-CV, 2023 WL 3107064, at *3 (Tex. App.—San Antonio Apr. 27, 2023, no pet.) ("'Every person who has the capacity to enter into a contract, in the absence of fraud, misrepresentation, or concealment, is held to know what words were used in the contract, to know their meaning, and to understand their legal effect.'" (quoting *Vera v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App.—San Antonio 1998, no pet.))).

[36] *See also, e.g.*, *Carrillo v. ROICOM USA, LLC*, 486 F. Supp. 3d 1052, 1057, 1065, 1068, 1077–78 (W.D. Tex. 2020) (finding that arbitration agreement was procedurally unconscionable in part because the employer's representative misrepresented the contents of a one-page, English-language arbitration acknowledgment form that the employee, who was illiterate in English, signed—in that the representative told the employee that she "had to sign this document to be able to register and be put on payroll," whereas the form stated that by signing the document, the employee acknowledged that she received and read the arbitration agreement); *Delfingen*, 407 S.W.3d at 794, 800, 802–03 (concluding that arbitration agreement was procedurally unconscionable because the employer's representative misrepresented the nature of the agreement, where the employee, who was illiterate in English, signed multiple documents, including the arbitration agreement—all in English; prior to the employee's signing the documents, the representative told the employee that she would translate the important portions of the documents; and the

- 13 -

Here, Prospero testifies as follows.  Born in Mexico, Prospero is a native Spanish speaker and does not understand or read English.  Prospero Aff. at 1.  On the day of his interview with Walmart, a supervisor directed him to a computer in a room and told him to complete various modules on the computer by going through them and clicking them as complete.  *Id.*  On the computer, all materials were presented in English.  *Id*.  The supervisor did not tell Prospero that he had the option of reviewing the materials in Spanish, and Prospero did not see or access any option to have the materials or training on the computer presented in English or Spanish.  *Id.* at 2.  He was by himself in the room; no interpreter was present to explain the contents of the computer to him.  *Id.* at 1–2.  He used his cellphone to translate some words or phrases, such as "where to sign" and "where to date," but he did not and could not understand what he was reading or signing.  *Id.* at 2.

Pointing out that the Texas Injury Care Benefit Plan CBL module provided Prospero with an option to select between English and Spanish, Walmart argues that a Spanish version of the arbitration policy was made available to him through the module.  Def.'s Reply at 1, 7; Wright Aff. at ¶ 21.

In support, Walmart presents the following evidence.  The very first screen of the module asks an associate to select the language of his preference by clicking one of two buttons labeled, "ENGLISH" and "ESPAÑOL"; the screen states, "Please choose your primary language to begin," and repeats it in Spanish.  Def.'s Mot. Ex. A, at 23.  The screen appears as follows:

---

representative translated documents related to such matters as attendance, substance abuse, and so on, but did not discuss or explain the arbitration agreement).



*Id.* Anne Stewart, who is a member services team manager at Walmart, testifies that an associate

can only access the Texas Injury Care Benefit Plan CBL module, including the module's first

screen, by using his associate identification number and password and that the rest of the module

cannot be completed until the language selection has been made. Stewart Aff. at ¶ 9. As

discussed, the electronic record of Prospero's training history shows that he completed the CBL

module, Def.'s Mot. Ex. C, at 105; *see also* Wright Aff. at ¶ 19; footnote 33, *supra*, and Wright

testifies that the records of training completed by an associate cannot be changed or altered,

Wright Aff. at ¶ 11.

    This evidence from Walmart is uncontroverted.[37] Consequently, the Court finds that

Prospero's testimony—that he "did not see or access" any option to have the materials or

---

[37] Walmart submitted Stewart's affidavit in response to the Court's order requesting further affidavits regarding, *inter alia*, the first screen of the Texas Injury Care Benefit Plan CBL module. Interim Order at 2–3. Despite that the Court invited Prospero to address any such affidavit, Prospero does not challenge Stewart's affidavit or her testimony in any respect. *See generally* Pl.'s Suppl. Br.; *see also* Interim Order at 5 (ordering that "Plaintiff may file a supplemental brief addressing Defendant's supplemental brief and affidavit (or declaration)" (capitalization omitted)).

training on the computer presented in English or Spanish—is insufficiently probative of any suggestion that the CBL module did not in fact provide him such an option.[38] *Cf. Aerotek*, 624 S.W.3d at 205–06, 208–09 (Where an employer's uncontroverted evidence establishes the efficacy of the security procedures for its computerized hiring application, which requires a candidate to sign an arbitration agreement by clicking, "[m]ere denials do not suffice" to demonstrate that the electronic signature on the agreement is not that of the candidate who completed the hiring application.); *see also* Tex. Bus. & Com. Code Ann. §§ 322.002(13) ("electronic record"), 322.009(a) ("the efficacy of any security procedure"), *supra*.

Moreover, although Prospero testifies that he believed that the CBL module documents were part of an agreement to work or an employment contract, Prospero Aff. at 2–3, his affidavit is devoid of any testimony that he asked the Walmart supervisor (who directed him to complete the modules) to assist him with accessing the Texas Injury Care Benefit Plan CBL module and the documents presented therein in Spanish or to provide him the physical copies of the same in Spanish. *See Micocina*, 2017 WL 4857017, at *6 ("If a person is unable to read a contract, it is his duty to find some reliable person to read and explain it to him before he signs it."); *accord Rivera v. Ross Dress for Less, Inc.*, No. 4:22-CV-74, 2023 WL 6282836, at *4 (S.D. Tex. Sept. 26, 2023) (rejecting plaintiff's argument that arbitration agreement was procedurally unconscionable, reasoning that "[e]ven assuming that [the employee] only speaks and reads Spanish, . . . [she] has not pointed to any evidence showing either that she requested assistance in understanding the agreement or that [the employer] refused such a request for assistance").

---

[38] The Court also observes that, despite his language barrier, Prospero scored "100" (apparently, the maximum attainable score) when he completed the Texas Injury Care Benefit Plan CBL module. Def.'s Mot. Ex. C, at 105 (Prospero's training history record); *see also* Stewart Aff. at ¶ 10 ("Once a module is completed by an associate, an electronic training record is retained which identifies the date the module was completed, the completion status, and the score, if the module requires a test.").

Finally, the evidence does not bear out Prospero's claim that Walmart affirmatively misrepresented or deceived him about the nature of the arbitration policy.  Pl.'s Resp. at 8. According to his own testimony, when Walmart's supervisor asked him to complete the CBL modules, the supervisor told Prospero that he needed to complete the "computer documents" (apparently, the documents presented in the modules) "as part of [his] job and that the documents were needed for [him] to work."  Prospero Aff. at 2.  These statements are consistent with Wright's testimony that all Walmart associates working in Texas are required to complete certain CBL modules, including the Texas Injury Care Benefit Plan CBL module.  Wright Aff. at ¶¶ 7, 12.  The supervisor did not characterize the nature of the modules or the documents presented therein, let alone misrepresent their nature.  *See Micocina*, 2017 WL 4857017, at *6–*7 (concluding that employer's restaurant director's statements—that arbitration acknowledgment was the "restaurant's policies" and that it was related to work—were true and not misleading).

In sum, the Court finds that Prospero has failed to meet his burden of establishing that the agreement to arbitrate under Walmart's arbitration policy is procedurally unconscionable.  *See id*.  at *1, *6–*8 (concluding that agreement to arbitrate was not procedurally unconscionable— where employee, who did not speak or read English, signed a one-page acknowledgment form, written in English, memorializing receipt of the arbitration agreement; the employee did so without requesting assistance in reading it; and there was no evidence that the employer affirmatively misrepresented the nature of the acknowledgment form).

## III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED**[39] that Defendant's Brief in Support of Demand for Arbitration (ECF No. 10), construed as a motion to compel arbitration, is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **STAYED** pursuant to 9 U.S.C. § 3.[40]

**IT IS FINALLY ORDERED** that the parties must **NOTIFY** the Court of the outcome of the arbitration proceedings within two weeks of final disposition.

**So ORDERED and SIGNED this  9th  day of March 2026.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

---

[39] *See Balderrama v. Deployed Servs., LLC*, No. EP-25-CV-00214-KC, 2026 WL 301071, at *9 n.58 (W.D. Tex. Jan. 28, 2026) (Pursuant to 28 U.S.C. § 636(b)(1)(A), a magistrate judge has the authority to decide a motion to compel arbitration and stay the case pending arbitration in a definitive order, rather than in a report and recommendation.); *see also* Fed. R. Civ. P. 72(a) (When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge, the magistrate judge must, when appropriate, "issue a written order stating the decision.").

[40] When a district court determines that a lawsuit is subject to arbitration, and a party requests a stay pending arbitration, § 3 of the FAA mandates that the court must stay the proceedings pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).